IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES FISHER, individually and on behalf of all others similarly situated, | : : : : | 10-cv-1865 |
| | : | Hon. John E. Jones III |
| Plaintiff, | : : | |
| v. | : : | |
| RITE AID CORPORATION and ECKERD CORPORATION, | : : : | |
| Defendants. | : | |

## MEMORANDUM

## February 16, 2011

### I. INTRODUCTION

Before the Court in this diversity action asserted under the Maryland Wage and Hour Law is Defendants Rite Aid Corporation and Eckerd Corporation's (collectively, "Defendants" or "Rite Aid") Motion to Dismiss Plaintiff James Fisher's ("Plaintiff" or "Fisher") Complaint (Doc. 1) pursuant to Federal Rule of Civil Procedure 12(c) ("the Motion"). (Doc. 25.) The Motion has been fully briefed and thus is ripe for disposition. (*See* Doc. 26 (Defendants' Brief in Support); Doc. 33 (Plaintiff's Brief in Opposition); Doc. 39 (Defendants' Reply); Doc. 40 (Defendants' Supplement).) For the reasons articulated in this

1

Memorandum, the Court shall grant the Motion and dismiss Plaintiff's Complaint.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."[1]  A "Rule 12(c) motion is little more than a relic of the common law and code era, and it only has utility when all the material allegations of fact are admitted in the pleadings and only questions of law remain.  Granting a Rule 12(c) motion results in a determination on the merits at an early stage in the litigation, and thus this court requires the movant to clearly establish that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Inst. for Sci. Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991) (citing *Jablonski*, 863 F.2d at 290-91, punctuation omitted).  A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

As in a motion to dismiss under Rule 12(b)(6), when considering a motion to

---

[1]Defendants filed an Answer on November 12, 2010 previous to filing the Motion (Doc. 24).  Therefore, the Motion is properly pursued under Federal Rule of Civil Procedure 12(c).

dismiss under 12 (c) courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss under 12(c), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A motion under Rule 12(b)(6) or 12(c) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state claim to relief

3

that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 120 S.Ct. At 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a motion to dismiss. *Iqbal*, 129 S.Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

III. **BACKGROUND**

Because Plaintiff fails to include a factual statement in his Brief in Opposition (Doc. 33), the following facts are derived from Plaintiff's Complaint or Defendants' Introduction (Doc. 26) but, nonetheless, are viewed in the light most favorable to Plaintiff in accordance with the standard of review.

Plaintiff initiated this action by filing a Complaint on September 3, 2010 seeking damages and injunctive relief against Defendants for alleged violations of the Maryland Wage and Hour Law ("MWHL"). (Doc. 1.) Plaintiff alleges that he was formerly employed by Defendants and was misclassified as exempt for the overtime pay requirements of the MWHL, and seeks to certify a class pursuant to Federal Rule of Civil Procedure 23 of:

> [A]ll individuals employed as Assistant Store Managers during any workweek since December 29, 2005 at any one of the 145 Maryland stores referenced in Defendant Rite Aid Corporation's Form 10-K, as filed with the United States Securities and Exchange Commission on April 28, 2010.

(Doc. 1 ¶ 13.)

The action *sub judice* is not the first-filed action regarding Plaintiff's allegations, however. On June 26, 2009, Plaintiff consented to become a party-plaintiff in the *Craig v. Rite-Aid Corporation*, 08-cv-2317, Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA") action before this Court, in which current and former Rite Aid assistant managers allege that they were misclassified as exempt

from the FLSA's overtime-pay requirements ("the *Craig* action" or "the FLSA action").

Shortly after joining the *Craig* action, Plaintiff filed a putative class action seeking the unpaid overtime wages under the MWHL and the Maryland Wage Payment and Collection Law ("MWPCL") in the United States District Court for the District of Maryland ("the Maryland action"). The Maryland Action asserted the same claims as Plaintiff asserts in the instant action. The Honorable Richard Bennet entered an Opinion and Order in the Maryland action on June 8, 2010 that granted Rite Aid's motion to dismiss Plaintiff's MWPCL claim with prejudice because that statute does not govern claims for overtime pay, and granted Rite Aid's motion to dismiss Plaintiff's MWHL claim without prejudice under the first-filed rule. *Fisher v. Rite Aid Corp.*, 09-1909-RBD, (D. Md. June 8, 2010) (attached at Doc. 26-2). Plaintiff then filed his MWHL claim in this Court on September 3, 2010.

### III. DISCUSSION

Defendants offer two central arguments in support of the Motion. First, Defendants argue that Plaintiff's MWHL claim was dismissed in the Maryland action because it is duplicative of the *Craig* action and that Plaintiff is impermissibly attempting to circumvent the ruling by re-filing the Complaint in

this Court. Second, even if the Maryland action was dismissed so that Plaintiff could re-file it in the same district as the *Craig* action, Defendants maintain that the Complaint must nonetheless be dismissed on preemption principles, because of the inherent incompatibility between the two actions, and because the Rules Enabling Act renders this action incompatible with the FLSA action.

In response, Plaintiff asserts that Judge Bennet dismissed the Maryland action not because it was impermissibly raised in federal court but rather refrained from hearing the case so that this Court could decide both the *Craig* action and the instant action. Further, Plaintiff argues that the MWHL claims are not preempted by the FLSA and that the inherent incompatibility doctrine is invalid regardless of whether it is applied in a dual-filed action or separate actions. Finally, Plaintiff claims that the Rules Enabling Act does not bar this action because the MWHL does not abridge substantive rights conferred by the FLSA. Because we find that the Motion should be granted on inherent incompatibility grounds, we shall not address the other arguments, regarding comity, preemption, and the Rules Enabling Act, but assure the parties we have fully considered all arguments in support of or in opposition to the Motion.[2]

---

[2]We note that our analysis will mirror that found in our Memorandum Opinion issued on today's date in *Knepper v. Rite Aid*, 9-2069, because each action shares the same determinative issue.

## A. FLSA and MWHL

In 1938, Congress made a finding that there were "labor conditions detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency, and general well-being of workers. . ." and thus enacted the FLSA "correct and as rapidly as practicable eliminate the [above-named conditions] without substantially curtailing employment or earning power." 29 U.S.C. § 202. Section 216(b) of the FLSA limits the scope of class actions for overtime pay by requiring that potential plaintiffs opt-in to the action. In *Hoffman-La Roche*, the Supreme Court recited Congress's reasoning for amending the FLSA procedures via the Portal-to-Portal Act of 1947:

> In part responding to excessive litigation spawned by plaintiffs lacking a personal interest in the outcome, the representative action by plaintiffs not themselves possessing claims was abolished, and the requirement that an employee file a written consent was added. *See* 93 Cong. Rec. 538, 2182 (1947) (remarks of Sen. Donnell). The relevant amendment was for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions.

*Hoffman-La Roche v. Sperling*, 293 U.S. 165, 173 (1989). This reasoning demonstrates that the "FLSA's opt-in requirement codifies Congress's desire to: (1) control the volume of minimum wage and overtime litigation by eliminating representative (i.e., opt-out) actions; and (2) increase each individual's knowledge and involvement in the action by ensuring the no one's rights are litigated without

8

their knowledge." (Doc. 26 pp. 27-28.)

In addition to the federal scheme, states have enacted their own labor-standards acts, including various wage and hour laws. Plaintiff thus asserts this action under the MWHL and invokes federal court jurisdiction under CAFA.[3] The MWHL explicitly incorporates the Federal Regulations regarding the delineation of executive and administrative employees, including the "white collar exemptions" from overtime pay requirements. Thus, both the MWHL and the FLSA provide that employers need not pay overtime wages to employees who serve in a "bona fide executive, administrative or professional capacity." 29 U.S.C. § 213(a)(1); Md. Code Ann. § 3-403.

B.      **Inherent Incompatibility**

A substantial body of case law has developed regarding the compatibility or otherwise of FLSA opt-in class-action claims and state wage and hour Rule 23 opt-out claims asserted in the same lawsuit. Various district courts have addressed whether these two schemes are "inherently incompatible" when asserted in a "dual-filed" or "hybrid" case, and there has emerged no set rule on the doctrine. At least

---

[3]The Class Action Fairness Act of 2005, enacted as a tort-reform measure, expanded a federal court's jurisdiction over large-scale class action law suits. *See* 28 U.S.C. §§ 1332(d); 1711-1715. Under CAFA, a district court that has diversity jurisdiction over at least one plaintiff and the defendants likewise has jurisdiction to hear an action in which the total amount in controversy exceeds 5 million dollars.

one Circuit Court of Appeals and several district courts have rejected the inherent incompatibility argument. *See, e.g. Ervin v. OS Rest. Serv., Inc.*, No. 09-3029, 2011 U.S. App. LEXIS 863 (7th Cir. 2011 Jan. 11, 2011); *Cortez v. Neb. Beef, Ltd.*, 266 F.R.D. 275 (D. Neb. Jan. 4, 2010) (Thalken, J.); *DiNardo v. Ned Stevens Gutter Cleaning & Installation, Inc.*, 2008 U.S. Dist. LEXIS 14946 (D.N.J. Feb. 28, 2008 (Chesler, J.); *Lehman v. Legg Mason, Inc.*, 532 F. Supp. 2d 726 (M.D. Pa. Sep. 20, 2007) (Rambo, J.); *Westerfield v. Washington Mutual Bank*, 2007 U.S. Dist. LEXIS 54830 (E.D.N.Y. July 26, 2007) (Amon, J.). The general argument utilized in support of rejection of the doctrine is that the FLSA is not intended to "limit the substantive remedies available to an employee under state law, nor to limit the procedural mechanism by which such a remedy may be pursued." *Lehman*, 532 F. Supp. 2d at 732.

This Court, on the other hand, previously agreed with the various sister courts and other Circuits that have held that a Section 216(b) collective action and a Rule 23 class action are "inherently incompatible", and noted:

> It is clear that Congress labored to create an opt-in scheme when it created Section 216(b) specifically to alleviate the fear that absent individuals would not have their rights litigated without their input or knowledge. To allow [a] Section 216(b) action to proceed accompanied by a Rule 23 opt-out state law class action claim would essentially nullify Congress's intent in crafting Section 216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement.

*Otto v. Pocono Health Sys.*, 457 F. Supp. 2d 522, 524 (M.D. Pa. October 27, 2006). *See also Herring v. Hewitt Assocs., Inc.*, 2006 U.S. Dist. LEXIS 56189 (D.N.J. August 11, 2006); *Moeck v. Gray Supply Corp.*, 2006 U.S. Dist. LEXIS 511 (D.N.J. January 5, 2006); *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill 2004).

The issue *sub judice*, however, is not whether our application of the inherent incompatibility doctrine in a dual-filed action is still viable; but rather whether it is appropriate to extend the underlying reasoning we adopted in *Otto* to a separate action. In support of the Motion, Defendants note that, "[b]ecause the overtime provisions of the MWHL mirror those of the FLSA, absent class members [] who elected *not* to opt-in to the conditionally certified *Craig* FLSA collective action, could nonetheless have their own FLSA claims adjudicated. . . ." (Doc. 26 p. 36 (emphasis in original).)[4] Thus, the considerations that render a Rule 23 class incompatible with a § 216(b) class logically extend to separately-filed actions.

Plaintiff disputes the validity of the inherent incompatibility doctrine in its entirety, but alternatively argues that, even if it is valid, its application should not extend beyond a dual-filed lawsuit. In support, Plaintiff cites a few district courts

---

[4]In support of this inference, Defendants note that only 81 out of 404 Associate Mangers in Maryland opted-in to the *Craig* action.

that have either dismissed an action without prejudice so a complainant may re-file in state court or used language that the two claims cannot be brought in the same lawsuit. Plaintiff's sole argument, however, is that application of inherent incompatibility to this action would stretch the doctrine too far and would result in an especially draconian outcome.

Both parties offer compelling arguments with respect to their relative positions. On the one hand, application of the "inherent incompatibility" doctrine, if warranted, appears to be the most logical decision because failing to do so would produce an illogical result – denying a plaintiff the opportunity to litigate a claim in one action, but allowing the claim to proceed in an action that only differs from the original by docket number, does not vindicate the purposes behind application of the doctrine in the first place. Though disregard of the doctrine would be illogical, adherence to the inherent incompatibility doctrine could be fundamentally unfair if it served to deprive a plaintiff of the opportunity to litigate their otherwise actionable state-law claims.

As we noted above, in abolishing the representative action under the FLSA Congress was responding to excessive litigation by plaintiffs who did not necessarily have a stake in the litigation. Thus, the opt-in requirement of the FLSA expresses Congress's intent to: "(1) control the volume of minimum wage and

overtime litigation by eliminating representative (i.e., opt-out) actions; and (2) increase each individual's knowledge and involvement in the action by ensuring the no one's rights are litigated without their knowledge." (Doc. 26 pp. 27-28.) In other words, § 216(b) is specifically designed to avoid litigation through representative action. If we allow Plaintiff to proceed in a separate action that is in contravention of the important policies underlying the federal statute, we would still "eviscerate the purpose of Section 216(b)'s opt-in requirement", *Otto*, 457 F. Supp. at 524, just as much as in a dual-filed action. Forcing a plaintiff to perform *one* procedural step differently – by filing a separate action rather than asserting the same, related claim in another action – has no practical remedial effect and still undermines the purposes of the FLSA. In essence, it is a distinction without a difference. Thus, we find that extension of the inherent incompatibility doctrine to separately filed FLSA and state wage and hour claims is warranted. We further find that this extension requires dismissal of the pending action because Plaintiff has no basis for relief in this Court. Accordingly, we shall grant Defendant's Motion to Dismiss (Doc. 25) on those grounds.

## V. CONCLUSION

The Complaint is, indeed, well-pleaded and on its face. Nonetheless, the cause of action is not actionable in this Court because of its inherent

incompatibility with the federal FLSA scheme.  Therefore, the Complaint demonstrates no plausible entitlement to relief.  Though we must dismiss the action from federal court, we do so without prejudice because we have not addressed the Complaint on its merits.  Plaintiff's ability to re-file the action in state court, provided the statute of limitations or other procedural matters do not bar such initiation, sufficiently negates any likelihood of prejudice to Plaintiff or unfair practical result of our decision.  Therefore, we will grant Defendants' Motion, dismiss the Complaint without prejudice, and close this case.  An appropriate Order shall enter.